UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ALONZO WEIR,

                                Plaintiff,          ***SUA SPONTE*** 
                                                                     **MEMORANDUM AND ORDER**

   -against-

                                                                     **23-CV-9097 (ST)**

C&B DELIVERY LLC (d/b/a TEMCO
LOGISTICS), HOME EXPRESS
DELIVERY SERVICE, LLC (d/b/a
TEMCO LOGISTICS), and TEMCO
LOGISTICS, INC.,

                                Defendants.
-----------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**

      Before this Court is an action by Alonzo Weir ("Plaintiff" or "Mr. Weir") against C&B Delivery LLC, Home Express Delivery Service, LLC, and Temco Logistics, Inc. ("Defendants") alleging violations of New York state labor laws. On May 15, 2024, Plaintiff's counsel notified the Court, via a motion to withdraw, that Plaintiff had ceased responding to counsel's communications, and that counsel had been unable to reestablish contact with her client despite numerous attempts to do so. Thereafter, the Court held two hearings, at which Plaintiff was ordered to appear, to assess the breakdown in communication and the resultant impact on both the Court-ordered mediation and Court-ordered discovery deadlines. Plaintiff failed to appear at both hearings, and the Court granted Plaintiff's counsel's motion to withdraw. Thereafter, the Court ordered Plaintiff to provide a status report by July 31, 2024, advising whether he intended to prosecute this matter and whether he intended to retain new counsel. Plaintiff has since failed to provide a status report by the Court-ordered deadline. For the reasons set forth below, this action is DISMISSED for failure to prosecute pursuant to Federal Rule of Civil Procedure 41.

## BACKGROUND

On November 2, 2023, Plaintiff filed this action in the Supreme Court of New York, County of Nassau, alleging violations of various New York state labor laws, as well as a New York state employment discrimination claim. *See* Notice of Removal 1–2, ECF No. 1. Thereafter, on December 11, 2023, Defendants removed the action to this District pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, and the matter was assigned to this Court.[1] *See id.*; Docket Entry dated Dec. 12, 2023.

On February 15, 2024, the Court held an initial conference, set discovery deadlines, and, at the request of the parties, referred the matter to the Court-Annexed Mediation Program and set corresponding deadlines for mediation. *See* Min. Entry Feb. 16, 2024, ECF No. 10. Specifically, with respect to discovery, the Court ordered that Rule 26(a) initial disclosures be completed by February 29, 2024; that Phase I discovery be completed by April 15, 2024; that motions to join new parties or amend pleadings be filed by May 13, 2024; that first requests for production of documents and interrogatories be completed by May 27, 2024; and that all fact discovery be completed by September 10, 2024. *See* Min. Entry Feb. 15, 2024, ECF No. 10. With respect to mediation, the Court ordered that a mediator be selected by February 29, 2024, that mediation be completed by May 15, 2024, and that a joint status report on the outcome of mediation be filed by May 22, 2024. *See id.*

For approximately three weeks thereafter, the parties took routine steps consistent with the Court's orders, including selecting a mediator and scheduling the mediation for May 1, 2024. *See* Docket Entry dated Feb. 29, 2024. However, on May 15, 2024, Plaintiff's counsel filed a motion

---

[1] The action was initially assigned to this Court according to the EDNY Pilot Program for Direct Assignment of Civil Cases to Magistrate Judges. *See* EDNY Administrative Order 2023-23. On March 8, 2024, the parties consented to this Court's jurisdiction for all purposes pursuant to 28 U.S.C. § 636(c). *See* Consent to Magistrate Jurisdiction, ECF No. 12.

to withdraw, advising the Court that counsel had been unable to contact Mr. Weir for over a month. *See* Pl.'s Mot. Withdraw, ECF No. 13. Counsel advised the Court that she had made "numerous attempts to contact Mr. Weir, by phone, text, and email," including four emails sent on April 14, 2024, April 21, 2024, May 2, 2024, and May 13, 2024, and had received no response. *See id.* Counsel further advised the Court that her office had attempted to contact Mr. Weir on May 15, 2024, to notify him that she would be moving to withdraw from representation if he did not respond, but still received no response. *See id.*

Thereafter, the Court deferred ruling on the motion to withdraw and scheduled a motion hearing for May 24, 2024, for which Plaintiff was ordered to appear. *See* May 16, 2024, Order. The Court ordered Plaintiff's counsel to serve Plaintiff with a copy of the May 16, 2024, Order via return receipt delivery and file proof of service with the Court. *See* May 16, 2024, Order. Later that day, Plaintiff's counsel filed proof of service accordingly. *See* Aff. Service, ECF No. 14.

On May 24, 2024, the Court held the hearing on counsel's motion to withdraw. *See* Min. Entry May 24, 2024, ECF No. 15. Mr. Weir did not attend the hearing, despite being ordered to do so. *See id.* Moreover, at the hearing, Plaintiff's counsel reported that she still had not been able to establish contact with her client, and that, because of her inability to contact her client, the parties had been unable to proceed with the scheduled May 1, 2024, mediation. *See id.* At the time of the May 24, 2024, motion hearing, several Court-ordered discovery deadlines had passed, including the completion of Phase I discovery, as had the Court-ordered deadline that mediation be completed by May 15, 2024, and that a mediation status report be filed by May 22, 2024. *See id.*; Min. Entry Feb. 15, 2024, ECF No. 10. Notably, the mediation that Plaintiff failed to attend had been ordered by the Court at Plaintiff's request. *See* Proposed Scheduling Order, ECF No. 9 (Discovery Plan Worksheet, filed by Plaintiff, requesting referral to EDNY's mediation program).

Moreover, several discovery deadlines, including requests for production of documents and interrogatories, and the completion of fact discovery, were imminent and required Plaintiff's cooperative participation. *See* Min. Entry Feb. 15, 2024, ECF No. 10. As a result, on May 29, 2024, the Court issued the following order to show cause:

> The Plaintiff is therefore Ordered to appear for a telephone conference on July 9, 2024 at 10:00 a.m. and show cause why this case should not be dismissed for failure to prosecute. Plaintiff's counsel is directed to immediately forward a copy of this Order via return receipt delivery to the Plaintiff client and file proof of service with the Court. Plaintiff is expressly warned that failure to appear at the July 9, 2024 telephone conference will result in this matter being dismissed for failure to prosecute.

*See* Min. Order May 24, 2024, ECF No. 15. In accordance with the order, Plaintiff's counsel filed proof of service with the Court later that day. *See* Aff. Service, ECF No. 16.

On July 9, 2024, the Court held the show cause hearing. See Min. Entry July 9, 2024, ECF No. 17. Plaintiff again did not appear despite being ordered to do so. *See id*. Further, Plaintiff's counsel reported that she still had not been able to successfully contact Plaintiff in the six weeks that had elapsed since the prior hearing. *See id*. Specifically, Plaintiff's counsel advised the Court that, since the May 24, 2024, motion hearing, her office had called both telephone numbers they had on file for Mr. Weir, leaving voicemails at each number, and sent text messages to both numbers, with no response. Consequently, given the breakdown in communication between Plaintiff's counsel and her client, the Court granted the motion to withdraw on July 11, 2024, and issued the following Order:

> Plaintiff is ordered to notify the Court, in writing, that he intends to continue this matter with a new attorney or pro se by July 31, 2024. If Plaintiff fails to comply with this Order, the Court will have no choice but to dismiss this matter for lack of prosecution. Plaintiff's counsel is directed to immediately forward a copy of this Order via return receipt delivery to the Plaintiff client and file proof of service with the Court. COUNSEL FOR PLAINTIFF MUST ELECTRONICALLY FILE THE CONTACT INFORMATION FOR ALONZO WEIR ON THE COURT'S DOCKET SHEET BY JULY 12, 2024.

*See id*. In accordance with the Order, Plaintiff's counsel filed proof of service with the Court later that day. *See* Aff. Service, ECF No. 18. Since that Order, Plaintiff has made no attempt to contact the Court to advise that he intends to prosecute this matter, and the deadline to do so has elapsed. As indicated in the Order, the Court now considers *sua sponte* whether to dismiss the action for failure to prosecute.

**LEGAL STANDARD**

Rule 41(b) of the Federal Rules of Civil Procedure authorizes a district court to dismiss a suit "[i]f the plaintiff fails to prosecute." Fed. R. Civ. P. 41(b); *see also Lewis v. Rawson*, 564 F.3d 569, 575 (2d Cir. 2009) (noting that, while explicitly provided for in Rule 41(b), district courts' power to dismiss for failure to prosecute was historically derived from courts' "'inherent power' . . . to manage their own affairs so as to achieve the orderly and expeditious disposition of cases" (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962))). "[I]nvoluntary dismissal is an important tool for preventing undue delays and avoiding docket congestion." *U.S. ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 250–51 (2d Cir. 2004) (citing *Link*, 370 U.S. at 629–31). "[I]t is unquestioned that Rule 41(b) . . . gives the district court authority to dismiss a plaintiff's case *sua sponte* for failure to prosecute." *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001) (citing *Link*, 370 U.S. at 630; *accord Hall v. Oriska Corp Gen. Contracting*, No. 21-1564, 2022 WL 17420307, at *2 (2d Cir. Dec. 6, 2022).

To be sure, involuntary dismissal for failure to prosecute is a "harsh remedy" that should be reserved for "extreme situations." *Lewis*, 564 F.3d at 576 (quoting *Minnette v. Time Warner*, 997 F.2d 1023, 1027 (2d Cir. 1993)). Thus, the Second Circuit has established a five-factor test (sometimes referred to as the "*Drake*" factors) for determining whether involuntary dismissal is warranted in a given case. *Id.* The *Drake* factors examine whether:

>(1) the plaintiff's failure to prosecute caused a delay of significant duration; (2) plaintiff was given notice that further delay would result in dismissal; (3) defendant was likely to be prejudiced by further delay; (4) the need to alleviate court calendar congestion was carefully balanced against plaintiff's right to an opportunity for a day in court; and (5) the trial court adequately assessed the efficacy of lesser sanctions.

*Id.* (quoting *Drake*, 375 F.3d at 254). "In making use of this test, [n]o one factor is dispositive, and ultimately [the Court] must review the dismissal in light of the record as a whole." *Id.* (quotations and citations omitted).

## DISCUSSION

As an initial matter, the Court notes that, while courts must review the *Drake* factors, they are not specifically required to do so on the record. *LeSane*, 239 F.3d at 209 (quoting *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996)). However, *pro se* plaintiffs are afforded "special leniency" and "notions of simple fairness suggest that a *pro se* litigant should receive an explanation before his or her suit is thrown out of court." *Id.* (quoting *Lucas*, 84 F.3d at 535). Mindful of this principle, the Court provides the foregoing analysis, but notes that Plaintiff's failure to prosecute this action began while Plaintiff was represented by counsel, who made diligent and repeated efforts to contact Plaintiff in order to facilitate the prosecution of this action. Thus, the heightened concerns of fairness that courts have when dismissing *pro se* actions for failure to prosecute are not particularly germane to the case at bar. That said, having thoroughly considered the *Drake* factors, the Court finds that they warrant dismissal, for the reasons that follow.

The first factor, whether the plaintiff's failure to prosecute caused a delay of significant duration, "breaks down into two parts: (1) whether the failures to prosecute were those of the plaintiff, and (2) whether these failures were of significant duration." *Drake*, 375 F.3d at 255. With respect to the latter, while "[t]here is no fixed period of time that must elapse before a plaintiff's failure to prosecute becomes substantial enough to warrant dismissal," multiple cases

have held that "[d]elays of several months have been found to warrant dismissal." *See Caussade v. United States*, 293 F.R.D. 625, 629 (S.D.N.Y. 2013) (collecting cases). Indeed, dismissal may be proper after as few as three months, particularly in circumstances where the plaintiff has become unreachable. *Id.* (collecting cases); *see also Lopez v. Cath. Charities of Archdiocese of New York*, No. 00-CIV-1247, 2001 WL 50896, at *3 (S.D.N.Y. Jan. 22, 2001) (dismissing case under Rule 41(b) where plaintiff "failed to take *any* steps to prosecute this action for at least three months" (emphasis in original)).

Here, the failure to prosecute is both solely attributable to Plaintiff, and has persisted for a significant duration. Plaintiff's counsel, via the motion to withdraw and in subsequent hearings, advised the Court that she made numerous attempts to contact Plaintiff, over a matter of months and via multiple methods, including telephone calls, emails, and text messages. Moreover, pursuant to this Court's orders, Plaintiff's counsel attempted to establish contact with Plaintiff by serving the Court's orders via return receipt delivery. Plaintiff made no effort to contact his counsel or the Court in response to these inquiries. Furthermore, even if he did not receive any of those communications, he made no efforts during these several months to reach out to his attorney and inquire into the status of his case. Thus, the first *Drake* factor militates in favor of dismissal.

The second *Drake* factor, whether Plaintiff was given notice that further delay would result in dismissal, also militates in favor of dismissal. On May 29, 2024, the Court issued an order to show cause why the case should not be dismissed for failure to prosecute, and expressly warned Plaintiff that failure to appear at the conference would result in dismissal. The Court directed Plaintiff's counsel to serve Plaintiff with the Court's Order to ensure that he was aware of the hearing, his obligation to attend, and the consequences of failing to do so. Despite that order, when Plaintiff failed to attend the show cause hearing, the Court did not dismiss the action, but rather

gave Plaintiff an additional three weeks to contact the Court to avoid dismissal. That order also explicitly warned that, if Plaintiff failed to contact the Court by the deadline, the action would be dismissed for failure to prosecute. As with the prior order, that order was also served on Plaintiff via return receipt delivery to ensure his knowledge thereof. In sum, the Court has explicitly warned Plaintiff twice, over a period of two months, that the case would be dismissed if he did not take action and took steps to ensure that Plaintiff received those warnings. Thus, the Court's two warnings militate in favor of dismissal. *See Hedvat v. Rothschild*, 175 F.R.D. 183, 189 (S.D.N.Y. 1997) (expressly warning plaintiffs on two separate occasions that a failure to prosecute could result in dismissal of claims weighed in favor of dismissal pursuant to Rule 41(b)).

The third factor, whether Defendants are likely to be prejudiced by further delay, also militates in favor of dismissal. A "presumption of prejudice is particularly appropriate where. . . the plaintiff's delay was 'prolonged.'" *See William v. City of New York*, 771 F. App'x 94, 95 (2d Cir. 2019) (quoting *Shannon v. Gen. Elec. Co.*, 186 F.3d 186, 195 (2d Cir. 1999)). To that end, "when a plaintiff offers no reasonable excuse for the delay, prejudice to the defendant is presumed because, as litigation drags on, evidence can be lost and discovery becomes more difficult." *Montanez-Garcia v. City of New York*, 2018 U.S. Dist. LEXIS 106807, *5-6 (S.D.N.Y. June 25, 2018) (citing *Sanders v. Doe*, No. 05CV7005, 2008 U.S. Dist. LEXIS 40515, at *12 (S.D.N.Y. May 8, 2008)). More specifically, "[w]here a plaintiff has become inaccessible for *months at a time*, courts presume prejudice." *Caussade*, 293 F.R.D. at 630 (collecting cases) (emphasis added).

Here, Defendants are likely to be prejudiced by further delay, and, in fact, have likely been prejudiced already. For example, Defendants took steps (and, thus, likely incurred legal fees), to select a mediator and schedule a mediation session which was ultimately cancelled because Plaintiff became unreachable, and have attended two Court hearings related to Plaintiff's

disappearance from this action. Moreover, multiple discovery deadlines have passed, during which Defendants were likely receiving inadequate discovery, or no discovery at all. For instance, prior to withdrawal, Plaintiff's counsel was presumably unable to properly facilitate discovery obligations because she was unable to contact her client, and thus was unable to obtain relevant documents and information. Defendants are rightly entitled to discovery needed to defend this action, and thus were likely prejudiced by inadequate or untimely responses. Now that Plaintiff is unrepresented and unreachable, Defendants are receiving no discovery at all and cannot take any steps to ensure preservation of evidence to defend the action. Thus, the delay is presumptively prejudicial. *See id.* (collecting cases).

The fourth *Drake* factor, which requires courts to carefully balance expediency and the rights of the plaintiff, also militates in favor of dismissal. In examining the fourth factor, courts must strike the proper "balance" between alleviating excess cases on the docket and the litigant's right to be heard. Specifically, courts look at whether a litigant has been given an opportunity "to be heard on the issue of failure to prosecute," *Martens v. Thomann*, 273 F.3d 159, 182 (2d Cir. 2001), and consider the plaintiff's "interest in prosecuting [his] case." *See Caussade*, 293 F.R.D at 631. "The Second Circuit has cautioned that [a] court must not let its zeal for a tidy calendar overcome its duty to do justice." *Id.* at 631 (quotations and citations omitted). "Nonetheless, fairness to other litigants, whether in the same case or merely in the same court as competitors for scarce judicial resources[,] may require a district court to dismiss a case pursuant to Rule 41(b)." *Id.* (quotations and citations omitted). To that end, "[d]ismissal is warranted where there is a lack of due diligence in the prosecution of the lawsuit by plaintiff." *West v. City of New York*, 130 F.R.D. 522, 524 (S.D.N.Y. 1990) (citing *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 43 (2d Cir. 1982)).

Here, the Court has given Plaintiff three opportunities to be heard on his failure to prosecute—namely, the hearing on Plaintiff's counsel's motion to withdraw, the show cause hearing, and the following three-week period during which Plaintiff was asked to write to the Court. Plaintiff did not utilize these opportunities to be heard and did not express any interest in prosecuting this case. On the other side of the scale, the Court has devoted resources to these conferences and hearings so that Plaintiff may have the opportunity to be heard and prosecute this action. Similarly, the Court-Annexed Mediation Program devoted resources for a mediation that could not occur because Plaintiff has been unreachable. Going forward, the Court would need to devote further resources, including staying or rescheduling discovery deadlines which continue to pass. In the interest of fairness to other litigants who are competing for scarce judicial resources, the Court finds that the fourth factor militates in favor of dismissing this action.

Finally, the fifth factor, the adequacy of lesser actions, also militates in favor of dismissal. "The final factor pertains to whether lesser sanctions would have been sufficient to remedy any prejudice resulting from plaintiff's delay." *Caussade*, 293 F.R.D. at 631 (quotations and citations omitted). However, "district courts are not required to exhaust possible lesser sanctions before imposing dismissal or default if such a sanction is appropriate on the overall record." *Id.* (quoting *S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 148 (2d Cir. 2010)). Moreover, "[c]ourts consistently find that dismissal is the only adequate remedy for failure to prosecute where a plaintiff cannot be contacted because the plaintiff would be unaware of any lesser sanction that could be imposed." *Id.* (collecting cases).

Here, Plaintiff has been unreachable for four months, and the Court has taken multiple steps to ensure that he has been contacted via multiple methods and, by ordering delivery of Court orders via return receipt delivery, has taken efforts to ensure that Plaintiff is in receipt of those

communications. The Court is unaware of any further steps which could be taken to contact Plaintiff, or any lesser sanction that could be imposed. Indeed, the only potential lesser sanction would include warnings and extensions of time, which remedy the Court has already pursued. Thus, the fifth *Drake* factor militates in favor of dismissal.

Having examined all five *Drake* factors, the Court finds that they weigh in favor of dismissal in light of Plaintiff's disappearance from this action.

## CONCLUSION

For the reasons set forth herein, this action is DISMISSED WITH PREJUDICE pursuant to Rule 41 of the Federal Rules of Civil Procedure for failure to prosecute. The Clerk of Court is directed to enter judgment accordingly and close this case.

**SO ORDERED.**

/s/ Steven Tiscione

Steven Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
August 13, 2024